IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION NO.: |
| v. | 1:17-CR-395-MLB-JKL |
| GILBERTO LOPEZ-GIRALDO (2),<br>RAUL LOPEZ-GIRALDO (3),<br>GUILLERMO ESCOBAR (4),<br>ALEXANDER DUQUE-CASANOVA (6), | |
| Defendants. | |

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Joint Motion to Dismiss Indictment for Pre-Indictment and Post-Indictment Delay.  [Doc. 101.]  The government has filed a preliminary response, in which it argues that the motion should be denied—without an evidentiary hearing—to the extent that it seeks dismissal for pre-indictment delay because Defendants have not made a prima facie showing of actual prejudice or that any delay resulted from a deliberate design by the government to gain a tactical advantage.  [Doc. 143.[1]]  Defendants Alexander

---

[1] The government concedes that an evidentiary hearing is appropriate to address issues relating to post-indictment delay.  [Doc. 143 at 8-9.]  Thus, the

Duque-Casanova and Raul Lopez-Giraldo have filed replies in support of the joint motion [Docs. 166, 167], and Defendant Gilberto Lopez-Giraldo has moved to adopt Raul Lopez-Giraldo's reply. [Doc. 168.]

For the reasons that follow, the Court agrees that Defendants' motion to dismiss should be **DENIED** to the extent that it seeks dismissal of the superseding indictment for preindictment delay. The Court **DEFERS** ruling on post-indictment delay pending an evidentiary hearing. The motion to adopt is **GRANTED**.

## I.    BACKGROUND

On November 14, 2017, a grand jury seated in this District returned a two-count indictment against Juan Pablo Lozada-Franco, Gilberto Lopez-Giraldo, Raul Lopez-Giraldo, and Guillermo Escobar, charging them with one count of concealment of money laundering the proceeds of drug sales and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(i) with respect to eighteen transactions that occurred between November 23 and November 29, 2012; and one count of laundering more than $10,000 and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 1957, in connection with three transactions that took place

---

motion to dismiss based on post-indictment delay is not ripe for consideration, and the Court focuses only on pre-indictment delay.

on November 26, 27, and 28, 2012.  [Doc. 1 at 1-5.]  On November 6, 2018, the grand jury returned a five-count superseding indictment, which added Defendants Duque-Casanova and Harby Mayor-Mejia, and dropped Defendant Lozado-Franco, who had died.  [Doc. 18; *see also* Doc. 102 at 1 n.1 (explaining that Lozado-Franco died between the initial and superseding indictments).]  Defendants, who were living in Bogato, Colombia, did not appear in the case until their arrests in the first half of 2020.  [*See* Docs. 13, 14, 38, 41, 42, 43, 44, 76.]

On July 13, 2020, Defendants moved to dismiss the charges against them for pre-indictment and post-indictment delay.  [Doc. 101.]  On July 17, 2020, at the pretrial conference in this case, the government advised that an evidentiary hearing would be needed to resolve the motion, and the Court set the hearing for October 23, 2020.  [Doc. 119.]  The government then moved to continue the hearing, which the Court granted, and rescheduled the hearing to Friday, November 6, 2020.  [Doc. 139.]

On Sunday, October 25, 2020, less than two weeks before the rescheduled hearing, the government filed a "partial" response to the motion to dismiss and argued, for the first time, that the hearing should be limited to issues relating to post-indictment delay.  [Doc. 143.]  According to the government, Defendants have

3

not provided a sufficient preliminary showing on pre-indictment delay to warrant an evidentiary hearing on the issue, and the motion to dismiss should therefore be denied to the degree it is based on preindictment delay.  [*Id.* at 3-9.]

Due to the COVID-19 pandemic, the Court again reset the evidentiary hearing on the motion to dismiss and directed Defendants to respond to the government's arguments.  [Docs. 162, 163.]  On February 11, 2021, Duque-Casanova filed a reply [Doc. 166], and on February 12, Raul Lopez-Giraldo filed his reply [Doc. 167].  Also on February 12, Gilberto Lopez-Giraldo moved to adopt Raul Lopez-Giraldo's reply.  [Doc. 168.]

## II.   DISCUSSION

### A.   The Parties' Contentions

In their initial motion, Defendants argue that the delay in returning an indictment prejudiced them in two ways.  First, they assert that due to the length of the delay, they no longer have access to witnesses and evidentiary materials that would assist them in their defense.  [Doc. 101 at 6.]  In particular, Defendants contend that intercepted communications—on which they expect the government to rely—in fact related to legitimate business activity, but due to the passage of time, Defendants "no longer have [their] businesses," "no longer possess any records to substantiate their claims," and "no longer have access to witnesses who

either worked with them . . . or could verify the legitimate business activities they were engaged in." [*Id.* at 7.]

Along these lines, Defendants also contend that their defense is "impaired" because Lozada-Franco—an alleged ringleader of the conspiracy—is deceased, and, as a result, they cannot call him as a witness to present exculpatory evidence. [Doc. 101 at 7.]  Defendants assert that the government knew by September 23, 2015—over two years before indicting the Defendants—that Lozada-Franco had been diagnosed with cancer and was undergoing chemotherapy, and that it deliberately waited those two years to charge them.  [*Id.* at 8.]

Finally, Defendants highlight that several reports provided in discovery indicate that prosecutors in this District originally intended to obtain indictments in early 2014.  [*See* Doc. 112-1.]  One of these reports, dated February 6, 2014, indicates that as of January 27, 2014, agents anticipated obtaining an indictment against Lozada-Franco, Raul Lopez-Giraldo, Gilberto Lopez-Giraldo, Duque-Casanova and possibly Moises Lopez-Carmona in February 2014.  [Doc. 112-2.]  A Homeland Security Investigations ("HSI") report dated the following month similarly reflects that the indictment would be obtained by April 2014.  [Doc. 112-3.]  No indictment was obtained, however.  Then, in September 2015, an informant

told investigators that Lozada-Franco had been diagnosed with cancer and was undergoing chemotherapy. [Doc. 112-4 at 3.] The government still did not obtain an indictment, however, until November 14, 2017, when Lozada-Franco, Gilberto Lopez-Giraldo, Raul Lopez-Giraldo and Guillermo Escobar were indicted for money laundering. [Doc. 112-5.] And the present, superseding indictment was not returned until November 6, 2018, when it added three more counts, as well as Defendants Duque-Casanova and Mayor-Mejia, and dropped Defendant Lozado-Franco. [Doc. 18.]

The government counters that Defendants' motion to dismiss for preindictment delay should be denied without an evidentiary hearing because they have not made a threshold showing that they were actually prejudiced by the delay in charging them in this case or that the government purposefully delayed indicting them to gain a tactical advantage. [Doc. 143.] With regard to prejudice, the government argues that the Defendants' assertion that the passage of time has deprived them of their ability to access witnesses or documents is too speculative to demonstrate actual prejudice. [*Id.* at 4.] It also argues that Defendants have not shown that the death of Lozada-Franco prejudiced them because there is no

indication that he would have, in fact, testified for them, and Defendants do not proffer what the substance of his testimony would have been. [*Id*. at 5.]

As to Defendants' allegations of tactical delay, the government responds that Defendant's theory—that the government intentionally delayed obtaining an indictment so that Lozada-Franco would be dead and to damage Defendants' ability to put up a defense—is "absurd." [Doc. 143 at 6.] The government points out that Lozada-Franco was named as the lead defendant in the original indictment, and that if he were still alive, the government would be proceeding against him. [*Id.*] The government explains that it had been waiting on Lozada-Franco to die to gain a tactical advantage, then it would not have indicted him in the first place. [*Id.* at 7.] Finally, the government argues that regardless of what the HSI reports say, an indictment was not "imminent in 2014" and that the final transaction allegedly took place in November 2014, months after those reports were prepared. [*Id.*]

On reply, Raul Lopez-Giraldo argues that Defendants have shown actual prejudice because (1) Defendants all owned legitimate businesses in a commercial district in Cali, Colombia, and that due to the passage of time, witnesses who worked in that district and documents related to their businesses no longer exist; and (2) Lozada-Franco would likely have "accepted responsibility and tried to

exculpate [Raul] Lopez-Giraldo." [Doc. 167 at 2-3.] With respect to Lozada-Franco's testimony, Raul Lopez-Giraldo explains that because Lozada-Franco organized transactions and was involved in phone conversations about them, he "would have been uniquely qualified to explain Raul Lopez-Giraldo's involvement (or lack of involvement) in the alleged transactions and knowledge (or lack of knowledge) regarding the source of funds at issue." [*Id.* at 3.]

Raul Lopez-Giraldo further argues that he can show that the government was motivated by tactical delay—either intentionally or recklessly. [Doc. 167 at 4.] In support, he cites an HSI report showing that the government intended to indict in early 2014, but waited until November 2017 to do so. [*Id.*] Raul Lopez-Giraldo asserts that based upon the government's knowledge that Lozada-Franco was sick with cancer, Defendants have made a prima facie showing entitling them to an evidentiary hearing. [*Id.* at 5.]

Duque-Casanova's reply brief reiterates the points that Defendants made in their initial motion, and urges the Court to hold an evidentiary hearing because whether he was prejudiced and whether the government's actions were motivated by an attempt to gain a tactical advantage present material factual disputes. [Doc. 166.]

### B.      Discussion

To establish a due process violation based on the government's delay in bringing an indictment a defendant must "establish both (1) that the delay actually prejudiced his defense and (2) that it resulted from a deliberate design by the government to gain a tactical advantage over him."  *United States v. Farias*, 836 F.3d 1315, 1325 (11th Cir. 2016); *see also United States v. Wetherald*, 636 F3d 1315 (11th Cir. 2011) (quoting *United States v. Lindstrom*, 698 F.2d 1154, 1157 (11th Cir. 1983)).  "This standard is 'an exceedingly high one.'"  *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (quoting *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984)).  Further, absent a prima facie showing that the defendant was actually prejudiced by the delay in charging him and that the government purposefully delayed indicting him to gain a tactical advantage, an evidentiary hearing on preindictment delay is not warranted.  *See Farias*, 836 F.3d at 1325 (citations omitted) (holding that a defendant was not entitled to evidentiary hearing on a claim of preindictment delay where "he failed to set forth any specific allegations in support of it").

### 1.      Actual Prejudice

"When a defendant asserts prejudice because of the loss of evidence, he must show that the loss impaired his ability to provide a meaningful defense."  *United*

9

*States v. Solomon*, 686 F.2d 863, 872 (11th Cir. 1982). The Court applies "a stringent standard . . . when examining the issue of prejudice," *United States v. Barragan*, 752 F. App'x 799, 801 (11th Cir. 2018) (quoting *United States v. LeQuire*, 943 F.2d 1554, 1560 (11th Cir. 1991)) (alteration adopted), and "[a]ctual prejudice and not merely the real possibility of prejudice inherent in any extended delay, must be demonstrated," *id.* (quoting *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985)) (alteration adopted; internal quotation marks omitted).[2] "Thus, a 'general allegation of loss of witnesses and failure of memories is insufficient to demonstrate the actual prejudice required . . . .'" *Id.* (quoting *United States v. Radue*, 707 F.2d 493, 495 (11th Cir. 1983)) (alteration adopted). Instead, a defendant must "demonstrate that the evidence thereby lost could not be obtained through other means." *United States v. Corbin*, 734 F.2d 643, 648 (11th Cir. 1984).

Applying these principles here, the Court finds that Defendants have not made a prima facie showing sufficient to warrant an evidentiary hearing. Defendants' contention that they do not have access to unspecified business

---

[2] This is because "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide 'the primary guarantee, against bringing overly stale criminal charges.'" *United States v. Lovasco*, 431 U.S. 783, 789 (1977).

documents and witnesses' testimony due to the passage of time is too speculative

to demonstrate actual prejudice.  *See Corbin*, 734 F.2d at 648 ("Faded memories

occasioned by preindictment delay do not alone satisfy the actual prejudice

requirement."); *see also United States v. Holland*, No. 1:17-CR-00234-AT-CMS,

2018 WL 8838858, at *6 (N.D. Ga. July 27, 2018) ("Neither has he provided any

specificity regarding the documents.  These sorts of speculative assertions do not

meet the actual prejudice standard.") (citing *Stoner*, 751 F.2d at 1546), *report and*

*recommendation adopted*, 396 F. Supp. 3d 1210 (N.D. Ga. 2019); *United States v.*

*Spurlin*, No. 1:13-CR-304-TWT-JKL-4, 2018 WL 1702351, at *3 (N.D. Ga. Feb.

27, 2018) (finding that defendant's "abstract concern that memories may have

faded over time does not provide a basis for finding actual prejudice" where

defendant failed to "specify what evidentiary gaps might arise due to witness's

inability to recall events from years past"), *report and recommendation adopted*,

2018 WL 1697445 (N.D. Ga. Apr. 6, 2018); *United States v. Sanders*, No. 3:15-

CR-00010-TCB, 2015 WL 6684746, at *8 (N.D. Ga. Oct. 29, 2015) (stating that

"speculative allegations, such as general allegation of loss of witnesses and failure

of memories, are insufficient to demonstrate  . . . actual prejudice" (citation

omitted)), *report and recommendation adopted*, *id.* at *3.

11

Nor have Defendants proffered sufficient information that Lozada-Franco's unavailability would cause them actual prejudice.  Under some circumstances, the death of a witnesses may support a claim of actual prejudice.  *See United States v. Foxman*, 87 F.3d 1220, 1223 (11th Cir. 1996); *United States v. Lindstrom*, 698 F.2d 1154, 1158 (11th Cir. 1983).  "Nevertheless, the death of a witness alone is insufficient to establish actual prejudice."  *United States v. Campbell*, No. 1:04-CR-0424-RWS, 2005 WL 6436621, at *4 (N.D. Ga. Oct. 24, 2005) (citation omitted).  Here, Defendants simply argue by assertion that Lozada-Franco would provide exculpatory testimony at trial.  They do not explain, however, what they would have expected him to say, much less why they think such testimony would be favorable.[3]  At best, Defendants have proffered information to suggest that the government's case is based in large part on Lozada-Franco's outsized role in the alleged money laundering scheme, including participating on phone conversations and organizing transactions.  [Doc. 167 at 3.]  But without an indication as to what

---

[3] Defendants propose that because Lozado-Franco knew he was dying, he was "even more likely" to accept responsibility and protect the other defendants from prosecution.  [See Doc. 167 at 3.]  Although this speculation suggests that Lozado-Franco might be motivated to exculpate the other defendants at his own expense (since any sentence he received would be short-lived), it does not provide the substance of any truthful testimony, nor does it explain how any truthful testimony would be exculpatory.

12

Lozada-Franco would have said on the stand, it is shear speculation to assume that

he would have provided testimony favorable to Defendants. *See Corbin*, 734 F.2d

at 648 (finding death of witnesses insufficient to show actual prejudice where

defendants did not proffer what the witnesses would have been able to testify to

and whether the substance of such testimony was otherwise unavailable).[4]  The fact

that Lozada-Franco played a key role in the alleged money laundering conspiracy

does not mean that has testimony would have been helpful to Defendants.

Moreover, as it pertains to transactions at the heart of the superseding indictment,

Defendants appear to concede that that much of the information about the

transactions at issue will be available from a confidential informant.  [Doc. 167 at

3.]  Ultimately, absent a bona fide basis to believe that Lopez-Giraldo's testimony

---

[4] Lopez-Giraldo emphasizes that Lozada-Franco was significant to this case and that the government's case is based in large part on phone conversations involving Lozada-Franco and transactions that he allegedly organized.  [Doc. 167 at 3.]  But that significance cuts both ways where there is no indication as to what he would have testified to (assuming he even took the stand at trial).  But as noted above, Defendants provide no basis to believe that if Lopez-Giraldo testified truthfully, he would not have implicated the Defendants, rather than exonerated them.  Simply put, the substance of Lozada-Franco's anticipated testimony matters, and Defendants, who ultimately bear the heavy burden of making a prima facie showing of actual prejudice, do not make this showing.

would have helped Defendants' defenses, the Court must find that Defendants have not made a threshold showing that his death caused them actual prejudice.

Finally, it is not clear that Lozada-Franco would have even testified at trial. He was named as a defendant in this case, and Defendants have not proffered any information—outside of speculating that his imminent mortality would have brought about an altruistic streak—to suggest he would have waived his right to self-incrimination to provide testimony favorable to these Defendants.  While, Lopez-Giraldo argues that "there is no evidence that Lozada-Franco invoked his right against self-incrimination or denied any wrong doing" [Doc. 167 at 2], this reverses the burden of proof.  It is the defendant's burden to make a prima facie showing that an evidentiary hearing is necessary.  Thus, the ***absence*** of evidence of what Lozada-Franco would have done cannot, under these circumstances, tip the scales in favor of Defendants.  As a result, Defendants have not carried their burden to demonstrate that the pre-indictment delay in this case caused substantial prejudice to their defense.

## 2.    Deliberate Delay

Because Defendants have not made a showing that they were actually prejudiced by the preindictment delay, the Court's analysis need not go further. *See Corbin*, 734 F.2d at 647-48 (declining to reach the question of whether

14

preindictment delay was intended to gain tactical advantage where defendants failed to show actual prejudice by delay). But even if Defendants had presented a prima facie showing of actual prejudice, they have not proffered sufficient evidence that the government was motivated by tactical delay. *See United States v. Marshall*, 360 F. App'x 24, 26 (11th Cir. 2010) ("Even where no good, detailed reason for the delay exists, we will not provide relief due to a pre-indictment delay unless there is evidence of bad faith or intent to gain a tactical advantage.") (citing *Stoner*, 751 F.2d at 1543). The crux of Defendants' theory is that the government delayed indicting this case in the hope that Lozada-Franco would die, which would somehow give the government a tactical advantage. The problem for Defendants is that this theory presupposes that Lozada-Franco's presence at trial would have helped them. As explained above, nothing that Defendants have proffered suggests that Lozada-Franco would have been an asset to the defense. Defendants' argument is further undermined by the fact that the government in fact indicted Lozada-Franco well within the applicable limitations period.

Raul Lopez-Giraldo asserts that he can still show intentional delay by demonstrating that the government acted recklessly. [Doc. 167 at 4.] He bases his argument on a footnote in *United States v. Lovasco*, where the Supreme Court

15

quoted the following statement in the government's appellate brief in that case: "A due process violation might also be made out upon a showing of prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense." *Lovasco*, 431 U.S. at 795 n.17. The Eleventh Circuit, in *United States v. Benson*, 846 F.2d 1338, 1341 n.3 (11th Cir. 1988), however, treated that footnote as dicta, and, as this Court has previously found, there is no indication that the Eleventh Circuit has expanded the test to include a reckless disregard standard, *see Spurlin*, 2018 WL 1702351, at *4. Further, based on *Benson*, district courts in this circuit have declined to expand the intent requirement for pre-indictment delay to include recklessness. *See, e.g., United States v. Orum*, No. CRIM.A. 2:12CR57-MHT, 2012 WL 5382843, at *2 (M.D. Ala. Nov. 2, 2012); *see also, e.g., United States v. Stoll*, No. 10-60194-CR, 2011 WL 939251, at *12 (S.D. Fla. Feb. 16, 2011) ("[T]he 'reckless disregard' test . . . has not been adopted—but rejected—by the Eleventh Circuit."), *report and recommendation adopted*, 2011 WL 765949 (S.D. Fla. Feb. 25, 2011); *cf. United States v. Holland*, 396 F. Supp. 3d 1210, 1223 (N.D. Ga. 2019) ("It is not at all clear from that dictum statement that the Supreme Court has adopted a 'reckless

disregard' standard for evaluating claims of pre-indictment delay."). But even if a defendant could meet his burden by showing that the government acted with reckless disregard, the result in this case would be the same, as no Defendant has made a colorable showing that the government was reckless with respect to the timing of the indictment in this case, or that the timing of the indictment had any bearing on the government's desire to obtain a tactical advantage.

## III.    CONCLUSION

For the reasons explained above it is **RECOMMENDED** that Defendants' Joint Motion to Dismiss Indictment for Pre-Indictment and Post-Indictment Delay be **DENIED IN PART**. [Doc. 101.] Specifically, it is recommended that the motion be denied to the extent that it seeks dismissal of the superseding indictment due to preindictment delay. To the extent that the motion seeks dismissal based on post-indictment delay, the Court will address that matter following the March 12, 2021 evidentiary hearing. Defendant Gilberto Lopez-Giraldo's motion to adopt Raul Lopez-Giraldo's reply is **GRANTED**. [Doc. 168.]

**IT IS SO ORDERED and RECOMMENDED** this 23rd day of February, 2021.

_____
JOHN K. LARKINS III
United States Magistrate Judge

17