IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

United States of America,

v.

Gilberto Lopez-Giraldo (2),
Raul Lopez-Giraldo (3),
Guillermo Escobar (4), and
Alexander Duque-Casanova (6),

Case No. 1:17-cr-395-MLB

Defendants.

_____/

**OPINION & ORDER**

Defendants Gilberto Lopez-Giraldo, Raul Lopez-Giraldo, Guillermo Escobar, and Alexander Duque-Casanova jointly moved to dismiss the first superseding indictment for prejudicial pre-indictment and post-indictment delay. (Dkt. 101.) The Magistrate Judge prepared a Report and Recommendation ("R&R") saying Defendants' motion to dismiss should be denied to the extent it seeks dismissal based on pre-indictment delay and deferred ruling on Defendants' arguments based on post-indictment delay pending an evidentiary hearing. Defendants Raul Lopez-Giraldo and Duque-Casanova filed their own objections to the recommendation. (Dkts. 176; 177.) Defendants Gilberto Lopez-Giraldo

and Escobar adopted Defendant Raul Lopez-Giraldo's objections. (Dkts. 178; 179.) The Court overrules Defendants' objections and adopts the Magistrate Judge's R&R.

## I. Background

On November 14, 2017, a grand jury charged Defendants Gilberto Lopez-Giraldo, Raul Lopez-Giraldo, Guillermo Escobar, and another person (Juan Pablo Lozada-Franco) with one count of money laundering the proceeds of drug sales and aiding and abetting that offense, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. (Dkt. 1 at 1–4.) That indictment identified eighteen allegedly illegal financial transactions between November 23 and November 29, 2012. (*Id.* at 2–3.) The grand jury also charged the same defendants with engaging in monetary transactions in criminally derived property and aiding and abetting that offense in violation of 18 U.S.C. §§ 1957 and 2. (*Id.* at 4–5.) That count identified three transactions that took place in November 2012. (*Id.* at 5.)

On November 6, 2018, the United States obtained a superseding indictment that made several changes. (Dkt. 18.) For purposes of the motions currently before the Court, the superseding indictment added

2

charges against Defendant Duque-Casanova and dropped charges against Lozado-Franco as he is no longer alive.  (*Id.; see also* Dkt. 102 at 1 n.1 (explaining Lozado-Franco died between initial and superseding indictments).)  The superseding indictment identifies the dates and amounts of the financial transactions that it claims violated the law.  Defendants, all of whom lived in Bogota, Colombia did not appear in this case until arrested in early 2020.  (*See* Dkts. 13; 14; 38; 41–44; 76.)

Defendants moved to dismiss the superseding indictment on the basis of pre-indictment and post-indictment delay.  Regarding pre-indictment delay, Defendants claim they were prejudiced in two ways— first, that because of the delay "Defendants no longer have access to witnesses and documents that would assist them in their defense" and, second, that Lozado-Franco's death prevents they from presenting "exculpatory evidence."  (Dkt. 101 at 6–7.)  They also claim the government deliberately delayed the superseding indictment to gain a tactical advantage.  (*Id.* at 8.)  In support of this contention, Defendants cited Homeland Security reports stating the government anticipated obtaining an indictment in early 2014, learned Lozado-Franco had been

diagnosed with cancer in late 2015, and waited another two years before obtaining the superseding indictment. (*Id.* at 8.)

The Magistrate Judge determined Defendants failed to present a prima facie case they were prejudiced by the delay or that the United States deliberately caused the delay to obtain a tactical advantage. He thus recommends denial of Defendant's motion to dismiss based on pre-indictment delay without holding an evidentiary hearing.

## II. Standard of Review

The district court must "conduct[] a plain error review of the portions of the R&R to which neither party offers specific objections and a de novo review of the Magistrate Judge's findings to which [a party] specifically objects." *United States v. McIntosh*, 2019 WL 7184540, at *3 (N.D. Ga. Dec. 26, 2019); *see* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those portions of the [R&R] to which objection is made."); *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983) (plain error review appropriate in absence of objection). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden*


*v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). After conducting the required review, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Discussion

In concluding Defendants' motion to dismiss for pre-indictment delay should be denied, Magistrate Judge Larkins identified the correct standard for assessing their claim, finding that, to establish a due process violation based on the government's delay in bringing an indictment, a defendant must "establish both (1) that the delay actually prejudiced his defense and (2) that it resulted from a deliberate design by the government to gain a tactical advantage over him." *United States v. Farias*, 836 F.3d 1315, 1325 (11th Cir. 2016); *see also United States v. Wetherald*, 636 F.3d 1315 (11th Cir. 2011) (quoting *United States v. Lindstrom*, 698 F.2d 1154, 1157 (11th Cir. 1983)). This is an "exceedingly high" standard. *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (quoting *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984)). The Magistrate Judge also properly concluded a hearing on pre-indictment delay is not warranted until the defendant makes a prima

facie showing of actual prejudice by the delay in charging him and that the United States purposefully caused that delay to gain a tactical advantage. *See Farias*, 836 F.3d at 1325 (citations omitted) (holding that a defendant was not entitled to evidentiary hearing on a claim of pre-indictment delay where "he failed to set forth any specific allegations in support of it"). The Magistrate Judge concluded Defendants had not presented such a prima facie case, and this court agrees.

### A. Defendants Failed to Establish a Prima Facie Case of Prejudice

Magistrate Judge Larkins concluded Defendants had not made a prima facia case of prejudice by pre-indictment delay. He concluded first that Defendants' contention "they do not have access to unspecified business documents and witnesses' testimony due to the passage of time is too speculative to demonstrate actual prejudice." (Dkt. 170 at 10–11.) Likewise, he concluded they had not "proffered sufficient information that Lozada-Franco's unavailability would cause them actual prejudice." (*Id.* at 12.) Defendants argue the Magistrate Judge erred in reaching these conclusions. Regarding the first, they argue their reference to "business documents" was sufficiently specific and because they explained in their motion that they had "businesses which had since

6

shuttered, records which were no longer accessible, and witnesses who previously worked with them who are now unavailable." (Dkts. 176 at 1; 177 at 2.) Regarding the second, they argue the Magistrate Judge ignored the important evidence Lozada-Franco could provide.

"When a defendant asserts prejudice because of the loss of evidence, he must show that the loss impaired his ability to provide a meaningful defense." *United States v. Solomon*, 686 F.2d 863, 872 (11th Cir. 1982). "A stringent standard is employed when examining the issue of prejudice." *United States v. LeQuire*, 943 F.2d 1554, 1560 (11th Cir. 1991) (citation omitted). "[A]ctual prejudice and not merely 'the real possibility of prejudice inherent in any extended delay[]' must be demonstrated." *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985) (quoting *United States v. McGough*, 510 F.2d 598, 604 (5th Cir. 1975)). As a result, a "general allegation of loss of witnesses and failure of memories [is] insufficient to demonstrate the actual prejudice required." *United States v. Radue*, 707 F.2d 493, 495 (11th Cir. 1983). Certainly they must provide the same specificity as to allegedly unavailable documents. And, as part of this, a defendant must also "demonstrate that

the evidence thereby lost could not be obtained through other means." *United States v. Corbin,* 734 F.2d 643, 648 (11th Cir. 1984).

Before the Magistrate Judge, Defendants argued that some of the communications the United States intercepted during the investigation (and presumably would introduce at trial) actually "related to [Defendants'] legitimate business activity" in Cali, Colombia. (Dkt. 101 at 6–7.) They also argued that, due to the passage of time, records of those businesses and witnesses familiar with them are no longer available, thus depriving them of the ability to "verify the legitimate business activities they were engaged in." (*Id.*) Defendants did not identify to the Magistrate Judge a single business document that would have provided this exculpatory information but is no longer available. They did not even describe the business in which they were involved or any transaction that might have legitimized their involvement in the conduct at issue. And, even after receiving the R&R, they still have not provided any such information.

Defendants have the indictment. They have the discovery. They know the transactions the United States claims were part of criminal activity. The United States identified each transaction by date, bank,

8

and amount. They also have the intercepted communications. And, they would—of course—know the business or businesses they were involved in at the time of the investigation. Yet, Defendants have not identified a single business record that might assist in their defense. Even if they cannot identify a precise document, they could at least identify the type of records (for example, a receipt or a bill of sale for some transaction) or the kind of legitimate business that might have created the record. But they make no attempt to do so, instead simply relying on the generic allegation of "businesses" with "records which were no longer accessible." (Dkt. 177 at 2.) This is nothing more than a general allegation of unavailable evidence. Defendants' reliance on such vague claims of long-gone documents fails to satisfy the prejudice prong necessary to obtain dismissal based on pre-indictment delay or even enough to require an evidentiary hearing.

Defendants also object to the Magistrate Judge's conclusion that they failed to show how Lozada-Franco's unavailability (as a result of his death) prejudiced them. Defendants generally argue that Lozada-Franco was involved in many of the recorded conversations and would have been able to testify that Defendants were not involved in the illegal money

laundering operation. (Dkts. 176 at 2; 177 at 2.) Defendant Raul Lopez-Giraldo says Lozada-Franco would have explained his "involvement (or lack of involvement) in the alleged transactions and knowledge (or lack of knowledge) regarding the source of the funds at issue." (Dkt. 176 at 2.) Defendant Gilberto Lopez-Giraldo says Lozada-Franco would have testified about "what [Lozada-Franco] did not disclose to [him] about the source of the funds in the alleged scheme." (Dkt. 177 at 2–3.)

The death of a material witness during a period of pre-indictment delay *can* result in actual substantial prejudice to a defendant. *See United States v. Mills,* 704 F.2d 1553, 1557 (11th Cir. 1983) (death of witness who had confessed to same murder with which defendant had been charged was "genuinely prejudicial" to defendant's case); *United States v. Lindstrom,* 698 F.2d 1154, 1158–59 (11th Cir. 1983) (death of two material witnesses was prejudicial to defendant's case). Nevertheless, "the death of a witness alone is insufficient to establish actual prejudice." *United States v. Campbell*, No. 1:04-cr-424-RWS, 2005 WL 6436621, at *4 (N.D. Ga. Oct. 24, 2005) (internal quotation and citation omitted). Whether it reaches this level depends—at the very least—on how beneficial that witness would have been to a defendant's

10

case. Before finding prejudice from the death of a witness, "courts have generally required that the defendant identify the witness he would have called; demonstrate, with specificity, the expected content of that witnesses' testimony; establish to the court's satisfaction that he [or she] has made serious attempts to locate the witness; and, finally, show that the information the witness would have provided was not available from other sources." *United States v. McCoy*, 129 F. App'x 815, 819 (4th Cir. 2005). And, of course, there must also be some indication the deceased witness would have agreed to testify or otherwise could have been compelled to provide beneficial testimony.

The Magistrate Judge correctly noted that Defendants have not presented any reason to believe Lozada-Franco would have testified at trial. At the time of his death, he was a defendant in this case. He thus could not have been compelled to testify and would have had every reason to invoke his right against self-incrimination. No evidence suggests he would have waived that right and that, in doing so, exculpated Defendants. Defendants say that, since he knew he was dying, he would probably have taken the opportunity to exculpate them, knowing any punishment he received would be short lived. Defendants present no

11

evidence—such as a statement from his former lawyer or anyone who knew his state of mind at the time—to substantiate his allegedly altruistic tendencies. Defendants essentially ask the Court to conclude a defendant can establish prejudice by simply alleging a dead co-conspirator would have provided exculpatory testimony. No authority supports this contention. The Court adopts the Magistrate Judge's conclusion that Defendants failed to show prejudice arising from Lozada-Franco's death so as to warrant a hearing.

### B. Defendants Failed to Show the United States Caused the Pre-Indictment Delay to Gain a Tactical Advantage

Finally, Defendants object to the Magistrate Judge's conclusion that, even if they had shown prejudice, they failed to show any pre-indictment delay was an intentional device by the government to gain a tactical advantage. (Dkts. 176 at 3–4; 177 at 3.) In support of this objection, Defendants rely on the same evidence they put before the Magistrate Judge—juxtaposition between Homeland Security reports indicating the United States intended to obtain an indictment in early 2014 and the fact the United States actually obtained an indictment in late 2017. To this, they add evidence the United States learned of Lozada-Franco's cancer diagnosis in September 2015. (Dkt. 170 at 5.)

12

They claim this raises sufficient indicia of intentionality, specifically that the United States delayed the indictment until Lozada-Franco died so it would get a tactical advantage. At the very least, they say the evidence is enough to obtain a hearing.

The Court disagrees. Plaintiff has no evidence the United States delayed indictment because it knew Lozada-Franco had cancer. The Court rejects Defendants' contention that mere chronological evidence the government learned something and did not act shortly thereafter suggests some intentionality or deliberation. And, even if it could in some instances, it does not here for several reasons. First, Defendants argue the United States delayed the indictment past the "anticipated" date in early 2014 because of Lozada-Franco's death. But, according to Defendants, the United States did not even learn he had cancer until September 2015. In other words, the indictment was delayed more than a year and a half before the United States obtained the information that Defendants say motivated the delay. The chronology itself defeats Defendants' supposition. Second, at the time of the alleged delay, Lozada-Franco was a defendant. Nothing suggests the United States feared Lozada-Franco might waive his right against self-incrimination,

13

anticipated he might exculpate his co-defendants in the process, and plotted to delay a pending indictment in the hopes he would die. Defendants have not presented a scintilla of evidence this occurred.[1] Finally, Defendant's narrative is based upon reports indicating an anticipated indictment in early 2014. The first report (dated February 6, 2014) said that, as of January 27, 2014, agents anticipated an indictment in February of that year. (Dkt. 112-2.) The next month, another report said the indictment would be in April 2014. (Dkt. 112-3.) Clearly the timeline was not so definite as to suggest it could only have slipped by intentional conduct. And, in fact, the initial indictment included criminal activity through November 2014—nine months after the date Defendants

---

[1] Before the Magistrate Judge Defendant Raul Lopez-Giraldo argued, based on a footnote in *United States v. Lovasco,* 431 U.S. 783 (1977), that he would show intentional delay by demonstrating the United States acted recklessly. (Dkt. 167 at 4.) The Magistrate Judge recognized that (1) the Eleventh Circuit has treated that footnote as dicta, s*ee United State v. Benson,* 846 F.2d 1338, 1341 n.3 (11th Cir. 1988), and (2) no district court in this circuit has expanded the intent required for pre-indictment delay to include mere recklessness. (Dkt. 170 at 16.) The Magistrate Judge concluded that, even if this lower standard applied, Defendants had not shown the United States acted with reckless disregard in delaying the indictment. Other than one use of the word "reckless" in their objections to the R&R, it is not clear Defendants challenge that finding. (Dkt. 176 at 4.) But, if they do, the Court has reviewed the Magistrate Judge's conclusion in this regard de novo and adopts his reasoning.

say the indictment was planned. In the light of all these facts, Defendants' allegations of a deliberate decision by the United States to delay the indictment to gain a tactical advantage is sheer speculation. The Court thus adopts the Magistrate Judge's conclusion Defendants have failed to present prima facie evidence of intentional misconduct by the United States so as to dismiss the indictment or even warrant a hearing.

## IV. Conclusion

The Court **GRANTS** Defendants Guillermo Escobar's and Gilberto Lopez-Giraldo's Motions to Adopt Objections (Dkts. 178; 179), **OVERRULES** Defendants' Objections (Dkts. 176; 177; 178; 179), **ADOPTS** the Magistrate Judge's Non-Final Report and Recommendation (Dkt. 170), and **DENIES IN PART** Defendants' Motions to Dismiss Indictment (Dkt. 101), specifically their motion to dismiss for pre-indictment delay. The Court recognizes that Defendants' motion to dismiss for post-indictment delay remains before the Magistrate Judge.

**SO ORDERED** this 5th day of April, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE