# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

United States of America,

v.                                    Case No. 1:17-cr-395-MLB

Gilberto Lopez-Giraldo (2), Raul
Lopez-Giraldo (3), Guillermo
Escobar (4), and Alexander
Duque-Casanova (6),

                        Defendants.

_____/

## <u>ORDER</u>

Defendants Gilberto Lopez-Giraldo, Raul Lopez-Giraldo, Guillermo Escobar, and Alexander Duque-Casanova jointly move to dismiss the indictment for pre-indictment and post-indictment delay. (Dkt. 101.) The Magistrate Judge recommends denying Defendants' motion. (Dkt. 233.) Defendants object. (Dkts. 236; 237; 238; 239.) The Court overrules Defendants' objections and adopts the Magistrate Judge's report and recommendation ("R&R").

## I.   Background

In November 2017, a federal grand jury charged Juan Pablo Lozada-Franco and Defendants Gilberto, Raul, and Guillermo with laundering drug money in November 2012. (Dkt. 1.)  In November 2018, the government obtained a superseding indictment that dropped Mr. Lozada-Franco (who had died), added two defendants (including Defendant Alexander), and added a count alleging a money laundering conspiracy in October 2010–November 2014. (Dkt. 18.)  In March 2019, Colombian authorities arrested Defendants in Cali, Colombia (where they lived). (Dkt. 182 at 45–47.)  Defendants Raul, Guillermo, and Alexander arrived in the United States in February 2020. (Dkt. 182 at 52.)  Defendant Gilberto arrived the following month. (Dkt. 182 at 52.)

In July 2020, Defendants moved to dismiss the indictment for pre-indictment delay (in violation of the Due Process Clause) and post-indictment delay (in violation of the Speedy Trial Clause). (Dkt. 101.)  The Court denied Defendants' pre-indictment claim but deferred ruling on the post-indictment claim pending an evidentiary hearing. (Dkt. 187.)  The Magistrate Judge held that hearing earlier this year. (Dkts. 182; 209.)  Defendants then filed supplemental briefs arguing their post-

indictment claim and reasserting their pre-indictment claim.  (Dkts. 213; 214; 215; 216; 217; *see also* Dkts. 218; 225; 226; 229; 230.)  The Magistrate Judge recommends denying Defendants' motion in its entirety.  (Dkt. 233.)  Each Defendant has filed objections.  (Dkts. 236; 237; 238; 239.)

## II.    Standard of Review

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020); *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with.").    "Frivolous, conclusive, or general objections need not be considered by the district court."  *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).  "It is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specially consider" because doing so "facilitates the opportunity for district judges to spend more time on matters actually contested and

3

produces a result compatible with the purposes of the Magistrates Act." *Schultz*, 565 F.3d at 1361.

"Failure to object [to an R&R] waives a party's right to review" before the district court.  Fed. R. Crim. P. 59(b)(2); *see Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").  It generally waives appellate review as well.  *See United States v. Esquivel*, 805 F. App'x 845, 847 (11th Cir. 2020) (noting that, in most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions").  Ultimately, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Each Defendant has filed objections here.  But these objections—which average about 6 pages per Defendant—cite almost no authority or record evidence.  And their analysis is often shallow and undeveloped.  So, for the most part, they "need not be considered by the district court." *Marsden*, 847 F.2d at 1548; *see Hickey v. Soc. Sec. Admin.*, 2019 WL

5872478, at *1 (M.D. Tenn. Sept. 12, 2019) ("Hickey's objections are conclusory, as they lack any citation to the record or legal authority, and, therefore, fail to properly challenge the Magistrate Judge's R&R findings.").[1]   The Court has nonetheless considered Defendants' objections in their entirety.  All of them lack merit.  The Court addresses the most significant objections below.

## III.  Discussion

### A.    Pre-Indictment Delay

Defendants renew their request to dismiss the indictment for pre-indictment delay.  "The statute of limitations is the principal device . . . to protect against prejudice arising from a lapse of time between the commission of a crime and an indictment or arrest."  *Stoner v. Graddick*, 751 F.2d 1535, 1540 (11th Cir. 1985).  But, in "limited" circumstances,

---

[1] *See also Brown v. Comm'r of Soc. Sec.*, 2016 WL 11578091, at *2 (M.D. Fla. Feb. 25, 2016) (declining to conduct de novo review because "Plaintiff has failed to support her [R&R objections] with citations to legal authorities or record evidence, much less colorable legal argument and analysis"); *Garcia v. United States*, 2016 WL 6909250, at *6 (S.D. Fla. Jan. 15, 2016) ("Garcia provides no meaningful analysis of the R&R, no citations to the record, and no citations to authority.  Without having done so, Garcia has waived his chance for *de novo* review of this part of the Report."); *Reed v. Potter*, 2010 WL 11505806, at *4 (N.D. Ga. Feb. 9, 2010) (summarily overruling R&R objection because "Plaintiff does not cite to any record or legal authority to support his position").

pre-indictment delay can also violate the Due Process Clause—"even when the indictment is brought within the limitation period." *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Barragan*, 752 F. App'x 799, 800 (11th Cir. 2018). "To prove a Fifth Amendment due process violation resulting from a pre-indictment delay, the defendant bears the burden to show: (1) actual prejudice to his defense from the delay; and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage." *United States v. Marshall*, 360 F. App'x 24, 25 (11th Cir. 2010). "This standard is an exceedingly high one," and places a "very heavy burden" on the defendant. *Id.*; *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986). "Actual prejudice[,] and not merely the real possibility of prejudice inherent in any extended delay, must be demonstrated" with "specificity." *Barragan*, 752 F. App'x at 801; *United States v. Holland*, 2018 WL 8838858, at *6 (N.D. Ga. July 27, 2018). Moreover, "recklessness is not sufficient to justify a dismissal based on pre-indictment delay. The delay must be intentional and for the purpose of gaining a tactical advantage." *United States v. Horton*, 270 F. App'x 783, 786 (11th Cir. 2008).

6

## 1.   Prejudice

In their *initial* motion, Defendants identified two ways in which they were allegedly prejudiced by the pre-indictment delay here.  First, "Defendants no longer have access to witnesses and documents that would assist them in their defense." (Dkt. 101 at 6.)  Defendants claimed they "owned legitimate businesses in a commercial district in Cali, Colombia," but, "due to the passage of time, witnesses who also worked in this district, and documents related to their businesses, no longer exist"—meaning Defendants can no longer "verify the legitimate business activities they were engaged in." (Dkts. 101 at 7; 167 at 2; *see also* Dkts. 176 at 1–2; 177 at 1–2.)  Second, Mr. Lozada-Franco recently died, meaning he can no longer testify in Defendants' defense.  (Dkt. 101 at 7.)  Defendants claimed Mr. Lozada-Franco was the central figure in the alleged money laundering scheme and thus was "uniquely qualified" to testify about Defendants' lack of involvement and knowledge.  (Dkt. 176 at 2; *see* Dkts. 167 at 2–3; 177 at 2–3.)

The Court rejected both arguments, finding them "too speculative to demonstrate actual prejudice." (Dkt. 187 at 6.)  As to the first, the Court explained that Defendants failed to identify "a single business

record that might assist in their defense," "the type of records" that might help them, "the kind of legitimate business that might have created the record," or "any transaction that might have legitimized their involvement in the conduct at issue."  (Dkt. 187 at 8–9.)   As to Mr. Lozada-Franco's death, the Court explained there was no reason to believe he "would have testified at trial," much less "exculpated Defendants."  (Dkt. 187 at 11.)

Defendants' *renewed* motion largely recycles the same two prejudice arguments that the Court rejected in its last Order.  (*See* Dkts. 213 at 6–7; 215 at 8–9; 216 at 9; 217 at 11.)  The Magistrate Judge found both arguments "remain[] far too generalized" to establish actual prejudice, and concluded there is "no reason to depart" from the Court's prior ruling. (Dkt. 233 at 14–16.)  The Court agrees.  Virtually everything the Court said in its last Order remains true today.  Defendants have still not identified a single business record that might assist in their defense, the type of records they think would help them, the kind of legitimate business that might have created those records, or any transaction that might have legitimized their involvement in the conduct at issue.  Nor

8

have they presented any compelling reason to believe Mr. Lozada-Franco would have testified at trial or exculpated Defendants.

Defendants lodge several objections to the R&R, but none are persuasive. First, Defendants say they their argument about lost business records/witnesses is sufficiently specific because they have shown (1) they previously worked at "El Diamante Mall" in Cali, (2) the mall closed after several people who worked there were arrested in 2013 in connection with a New York indictment for money laundering, and (3) the records and witnesses from the mall are no longer available as a result. (Dkt. 238 at 2.) But none of this really addresses the Court's concerns. Defendants still have not identified a record or witness—with any reasonable specificity—that might assist in their defense. Moreover, although Defendants keep saying their businesses have closed, they cite no evidence to support that fact. On the contrary, the prosecutor testified he did not know for sure whether the mall—or any of its shops—closed after the 2013 arrests. (*See* Dkt. 182 at 60–61.)

Defendants next fault the prosecution for not obtaining their business records from the Colombian government. (Dkts. 237 at 1–2; 239 at 1.) But the prosecutor testified he did not know whether the

9

Colombian government even had those records, he "file[d] a mutual assistance treaty request to get the discovery that the Colombians ha[d]," he asked for their "surveillance efforts," and he "hope[d] that they gave us everything" they had.  (Dkt. 182 at 102, 137.)  These efforts were reasonable.  And even if they were not—even if the government did not lift a finger to get the documents Defendants want—we still have no idea what those documents actually are or what they might say.  So it is impossible to say their absence caused "actual substantial prejudice" here. *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996).

Defendants also claim Mr. Lozada-Franco's death is prejudicial not only because he can no longer testify but also because it may preclude Defendants from introducing, at trial, recorded exculpatory conversations between Mr. Lozada-Franco and a confidential source. (Dkts. 237 at 2; 239 at 2.)  But this argument is too speculative to meet Defendants' burden to show prejudice.  First, there is no evidence the recorded conversations are even exculpatory (or, if there is, Defendants have not cited it).  Second, even if the recordings are exculpatory, there is no evidence the government will omit them from its case at trial. Defendants simply believes it is "unlikely" the government will introduce

the recordings—but we do not know one way or the other. (Dkt. 229 at 2.) Third, even if the government does not introduce the recordings, there is no evidence the government will seek to bar Defendants from doing so. Again, Defendants simply speculate it is "likely the government would object"—but, as before, we do not really know whether that is true. (Dkt. 229 at 2.) Fourth, even if the government did seek to preclude Defendants from introducing the recordings at trial, Defendants have not shown the government would succeed. Defendants cite no authority or doctrine requiring the Court to exclude the recordings. They do not even sketch a theory of exclusion beyond simply noting that Mr. Lozada-Franco is dead. (*See* Dkts. 217 at 12; 230 at 6; 237 at 2.) Moreover, even if the recordings were excluded, Defendants have not shown the substance of those recordings "could not be obtained through other means"—such as the confidential source to whom Mr. Lozada-Franco allegedly made the exculpatory statements. *United States v. Corbin*, 734 F.2d 643, 648 (11th Cir. 1984). Ultimately, as Defendants themselves put it, "it remains to be seen" whether the recordings (or an adequate substitute) will be admitted at trial. (Dkt. 176 at 3.) That uncertainty precludes a finding of actual prejudice.

Finally, Defendants complain the pre-indictment delay allowed the government to conduct further investigation and add a conspiracy charge against them.   They say this increased their legal exposure, which constitutes actual prejudice under the Due Process Clause.   (*See* Dkts. 237 at 2–3; 239 at 3.)   Incorrect.   Defendants "do[] not cite any authority for the proposition that the addition of charges constitutes 'prejudice.'" *United States v. Chan*, 2006 WL 2255743, at *2 (N.D. Cal. Aug. 7, 2006). Indeed, a delay does not prejudice a defendant simply because it gives "the government time to bring additional charges against [him]," even if those new charges "permit[] the government to seek a substantially increased sentence." *United States v. Wilson*, 962 F.2d 621, 623–24 (7th Cir. 1992).   Instead, the delay must have "impaired either the preparation of [defendant's] defense or the fairness of his trial"— egregious injuries that "rise to [the] constitutional proportions [required] to support dismissal." *United States v. Keel*, 254 F. App'x 759, 760 (11th Cir. 2007).   That Defendants now face more charges than they would like is not constitutionally cognizable prejudice under this stringent standard.   The extra charge "may displease [Defendants], but the

government is entitled, in good faith, to vigorously pursue all available criminal charges against a defendant." *Wilson*, 962 F.2d at 624.

### 2. Tactical Advantage

Even if Defendants could somehow establish prejudice, they must also show "the government intentionally delayed this action in an effort to gain a tactical advantage over [them]." *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011). The Magistrate Judge did not reach this issue. But, if the Court were required to do so, it would resolve it in the government's favor. That is fatal to Defendants' motion.

Defendants first claim the "delay in seeking indictment was to conduct further investigation for the purpose of adding a conspiracy charge." (Dkts. 216 at 9; 217 at 11; 230 at 5.) But this alleged purpose is insufficient because "investigative delay is fundamentally *unlike* delay undertaken by the Government solely to gain tactical advantage over the accused." *Jackson v. Benton*, 315 F. App'x 788, 791 (11th Cir. 2009) (emphasis added). Defendants counter that the government had enough evidence to charge a conspiracy earlier than it did. (*See, e.g.*, Dkts. 213 at 6; 230 at 5; 236 at 3.) But the government obtained substantial information about the conspiracy in the year leading up to the

13

superseding indictment.  (*See* Dkt. 233 at 6–9.)  And the government was entitled to pursue that information to strengthen and refine its proposed conspiracy charge.  A prosecutor need not charge a defendant as soon as he obtains the minimum evidence necessary to do so, especially where the charge is a complex conspiracy whose scope may be difficult to determine.  A prosecutor is entitled to conduct reasonable additional investigation to perfect the charge.  Doing so constitutes legitimate "investigative delay," which is insufficient to establish the tactical advantage requirement.  *Benton*, 315 F. App'x at 791.

Defendants next claim "the government provided no explanation for the gap between the criminal activity and the initial indictment" (Dkts. 237 at 4; 239 at 5.)  But, "where the record shows no reason for the delay (or where delay is due to simple negligence), no due process violation exists."  *Foxman*, 87 F.3d at 1223 n.2; *see United States v. Gayden*, 977 F.3d 1146, 1150 (11th Cir. 2020) (merely arguing that "the government failed to explain the delay" is insufficient).

Seizing on language in the R&R, Defendants also claim "the government simply left this case on the back burner" until 2017.  (Dkts. 237 at 3; 238 at 3–4; 239 at 4.)  But there is no evidence the government

made an intentional choice to place this case "on the back burner"; the Magistrate Judge simply "wonder[ed]" if that might be so. (Dkt. 233 at 26.) And, even if the government did decide to put the case on the backburner, we still do not know *why* it made that decision. This is critical because the government's motivation "must violate fundamental conceptions of justice, or a sense of fair play or decency." *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011); *see United States v. Jones*, 2018 WL 4354891, at *3 (S.D. Fla. Sept. 12, 2018) (contrasting "a lack of attention" with the requisite purpose "to obtain a tactical advantage"). Thus, if the government simply "wasn't interested in the case" for a while, or chose to "direct[] its resources toward other cases," that would not trigger due process concerns. *Barragan*, 752 F. App'x at 801; *Butler*, 792 F.2d at 1534. "The government's inaction in bringing the case is insufficient, standing alone, to establish that the government's actions were motivated by an attempt to gain a tactical advantage." *Barragan*, 752 F. App'x at 801; *Butler*, 792 F.2d at 1534.

Finally, Defendants claim the government's failure to bring charges earlier "was in reckless disregard of the likelihood that . . . delay would make it more difficult for [Defendants] to mount a defense." (Dkt. 215 at

8; *see also* Dkts. 229 at 4; 237 at 3; 239 at 4.)  But the Eleventh Circuit

has "specifically held that recklessness is not sufficient to justify a

dismissal based on pre-indictment delay." *Horton*, 270 F. App'x at 786;

*see United States v. Benson*, 846 F.2d 1338, 1341 n.3, 1343 n.5 (11th Cir.

1988); *United States v. Stoll*, 2011 WL 939251, at *12 (S.D. Fla. Feb. 16,

2011) ("[T]he 'reckless disregard' test urged by [defendant] has not been

adopted—but rejected—by the Eleventh Circuit.").  So this argument is a

non-starter.  And, even if reckless pre-indictment delay could violate due

process, the Court sees no reason to depart from its earlier conclusion

that Defendants have not established recklessness here.  (Dkt. 187 at 14

n.1.)

Based on its own review of the evidence, the Court does not know

why it took the government so long to obtain the original indictment.

Much of the delay is simply left unexplained by the record.  But, when it

comes to the additional year it took to obtain the superseding indictment,

the record is clear that the government diligently used this time to

conduct further investigation and to complete its internal process for

securing an indictment.  (*See* Dkt. 233 at 30–31.)  The lack of explanation

for the initial delay does not offend due process. *See Foxman*, 87 F.3d at

1223 n.2 ("[W]here the record shows no reason for the delay . . . , no due process violation exists."). Nor does the investigative explanation for the later delay. *See Barragan*, 752 F. App'x at 801 (no due process violation where "delay[] result[ed] from the government undertaking additional investigation in good faith"). So the Court concludes the government did not "delay[] the indictment in order to gain a tactical advantage" here. *Id.*

### 3.   Conclusion

Having considered Defendants' objections and the record more generally, the Court adopts the Magistrate Judge's recommendation and (yet again) denies Defendants' motion to dismiss the indictment for pre-indictment delay.

### B.   Post-Indictment Delay

Defendants also move to dismiss the indictment for *post*-indictment delay under the Sixth Amendment's Speedy Trial Clause. That clause says, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "[T]he Supreme Court [has] established a four-factor test to determine when a defendant's constitutional right to a speedy trial has been violated." *United States v.*

*Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). "The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant." *Id.* "The relevant delay is the time between the date of the indictment and the trial date." *Id.* at 1337 n.3. "If . . . the first three factors do not weigh heavily against the government, the defendant generally must demonstrate actual prejudice to succeed on his speedy trial claim." *United States v. Villarreal*, 613 F.3d 1344, 1355 (11th Cir. 2010); *see Ingram*, 446 F.3d at 1338.

As of today, the post-indictment delay for Defendants Guillermo, Gilberto, and Raul is roughly four years (November 2017–December 2021). The delay for Defendant Alexander, who was not named in the initial indictment, is roughly three years (November 2018–December 2021). (*See* Dkt. 233 at 21–22.) The Magistrate Judge found this delay does not violate the Sixth Amendment. He concluded that the first factor (length of delay) weighs heavily against the government, that the second and third factors (reason for delay and assertion of speedy trial right) weigh moderately against the government, but that no speedy trial violation occurred because Defendants failed to establish actual prejudice

under the fourth factor. (Dkt. 233 at 19–46.) Defendants object to the Magistrate Judge's analysis of factors 2–4.

### 1. Reason for Delay (Factor 2)

Factor 2 assesses the reason for the delay between indictment and trial. "[D]ifferent weights are to be assigned to different reasons for delay." *Doggett v. United States*, 505 U.S. 647 (1992).

> (1) [A] deliberate attempt to delay the trial in order to hamper the defense is weighted heavily against the government; (2) a more neutral reason such as negligence or overcrowded courts is weighted less heavily against the government but nevertheless is considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant; and (3) a valid reason, such as a missing witness, serves to justify appropriate delay.

*Villarreal*, 613 F.3d at 1351. "[T]he burden is on the prosecution to explain the cause of the pre-trial delay." *Ingram*, 446 F.3d at 1337.

The Magistrate Judge found that factor 2 weighs only moderately against the government because (1) "the government . . . established good faith reasons for why it took an additional year to supersede the indictment" (Dkt. 233 at 31); (2) the government "worked diligently" over the next five months to arrest Defendants (Dkt. 233 at 32); (3) the year-long extradition process that followed Defendants' arrests "cannot be attributed to the government" (Dkt. 233 at 33); and (4) Defendants

do not—and could not—argue that "any delay following their appearances in this District is attributable to the government" (Dkt. 233 at 29 n.18).[2]

In their objections, Defendants claim the Magistrate Judge "ignores the fact that the government did absolutely nothing to extradite the Defendants on the original indictment"—that is, the government could have started the extradition process when it obtained the initial indictment in November 2017, but it held off on doing so until it obtained the superseding indictment about a year later.  (Dkts. 237 at 5; 239 at 5.) The Magistrate Judge did not "ignore[]" this fact.  He addressed it head-on, properly noting that "the government . . . provided a good faith reason for not commencing the extradition process" earlier than it did. (Dkt. 233 at 32 n.21)  As the Magistrate explained, "initiating extradition

---

[2] In his factor 2 analysis, the Magistrate Judge also considered the reason for the *pre*-indictment delay in this case.  He found it weighs against the government only moderately because there is no "evidentiary basis" to conclude the government delayed the indictment in "bad faith."  (Dkt. 233 at 29–30.)  To the extent this conclusion has any bearing on factor 2, which focuses on *post*-indictment delay, the Court sees no error in it.  *See United States v. Sutton*, 862 F.3d 547, 559 (6th Cir. 2017) ("Negligence and unexplained delays weigh less heavily against the government, but remain relevant."); *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994) ("Unexplained or negligent delay is weighed against the state, but not heavily.").

proceedings prior to obtaining the final indictment would have been premature, as the rule of specialty generally bars the government from superseding charges following a defendant's extradition." (Dkt. 233 at 32 n.21.)  Defendant's objection is thus overruled.

### 2.   Defendants' Speedy Trial Assertion (Factor 3)

Factor 3 considers whether the defendant was "vigilant in asserting his speedy trial right." *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003).  "[A] defendant has some responsibility to assert a speedy trial claim." *Barker v. Wingo*, 407 U.S. 514, 529 (1972).  "[W]here a defendant is aware that charges are pending against him, his failure to make any effort to secure a timely trial" weighs against a speedy trial violation. *United States v. Kresler*, 392 F. App'x 765, 771 (11th Cir. 2010).

Here, Defendants were indicted in November 2017 and November 2018, were arrested in March 2019, but did not file their speedy trial motion until July 2020.  The Magistrate Judge found "Defendants were unaware of the charges against them prior to their arrests in March 2019, and, therefore, their failure to make a demand for a speedy trial before then cannot be counted against them."  (Dkt. 233 at 37.)  But the Magistrate Judge also found Defendants "failed to diligently pursue

extradition" after their arrests (even though they were represented by counsel). (Dkt. 233 at 38.) Instead, Defendants "waited nearly half a year" to file petitions for expedited extradition and "then took no action to speed the process, even when [they] grew concerned about the length of the delay." (Dkt. 233 at 39.) Defendants did, however, file their speedy trial motion shortly after arriving in the United States. (Dkt. 233 at 38.) "Balancing these countervailing considerations," the Magistrate Judge concluded factor 3 "weighs against the government, but only moderately." (Dkt. 233 at 39.)

Defendants object that they told the government they wanted to be "extradited as quickly as possible" and that the government "did nothing to expedite the process despite [their] requests." (Dkt. 239 at 6; *see* Dkts. 236 at 4–5; 237 at 5; 238 at 4–5.) But Defendants did not discuss expedited extradition with the government until late August 2019, more than five months after their arrests. (Dkt. 209 at 61, 79.) They did not file their petitions for expedited extradition until October 2019, about seven months after their arrests. (Dkt. 209 at 48–49.) And, once they filed their petitions, they "didn't do anything to ensure that the process was working properly" even though they recognized things were moving

22

"abnormally slow[ly]."  (Dkt. 209 at 85–86; *see id.* at 83, 91.)  Notably, Defendants were represented—throughout this period—by a Colombian attorney who had handled several extradition cases before.  (Dkt, 209 at 45, 69, 74.)  Viewing these facts in the aggregate, there is no doubt Defendants do bear some responsibility for their delayed arrival in the United States.[3]

The government, on the other hand, bears little (if any) responsibility.  The prosecutor was clear with Defendants from the outset that "he had nothing to do with the speed of the extradition."  (Dkt. 209 at 81.)  And he has since testified that he—and the United States more generally—had no "authority" or "control" over the pace of the process.  (Dkt. 182 at 44, 53, 80, 82–83, 96, 107, 118, 145, 153–155.)  Even the *status* of Defendants' extradition was a "black box" to the government.  (Dkt. 182 at 106–107.)   It was Defendants themselves—and the Colombian authorities—who were ultimately responsible for expediting Defendants' extradition to the United States.  (*See* Dkt. 182 at 82, 153.)

---

[3] The prosecutor testified that, "if a defendant does not affirmatively seek to waive extradition, . . . the default position [is] that defendant is challenging that extradition."  (Dkt. 182 at 153.)

Given Defendants' role in their delayed extradition, and the non-role of the government, the Court agrees with the Magistrate Judge that factor 3 weighs only moderately in Defendants' favor. *See United States v. Knowles*, 390 F. App'x 915, 929 (11th Cir. 2010) (recognizing, in the factor 3 context, that "defendant cannot avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States"); *Kresler*, 392 F. App'x at 771 (recognizing the factor 3 relevance of "the delay caused by the defendant's efforts to avoid extradition (in this case almost six months)"); *United States v. Cavan*, 2016 WL 4098582, at *5 (S.D.N.Y. July 28, 2016) ("Rather than consenting to his extradition, Cavan contested his extradition for more than two years. . . . Accordingly, the Court weighs the third *Barker* factor heavily in favor of the government.").

### 3.    Prejudice (Factor 4)

The final factor is "the extent to which the defendant suffered actual prejudice from the delay." *Villarreal*, 613 F.3d at 1355. This is "the most difficult [factor] to evaluate qualitatively and quantitatively." *United States v. Greer*, 655 F.2d 51, 53 (5th Cir. 1981). To do so, the court

must "assess the prejudice suffered by the defendant in light of the three interests of the defendant the speedy trial right was intended to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Villarreal*, 613 F.3d at 1355. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* The last form of prejudice—"impairment of one's defense"—is also "the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." *Doggett*, 505 U.S. at 655.

The Magistrate Judge found that Defendants failed to show the post-indictment delay caused them actual prejudice here. Defendants object, but the Court agrees. (*See* Dkts. 236 at 5; 237 at 6; 238 at 5; 239 at 7–8.) There is no evidence Defendants lost any significant exculpatory evidence—or otherwise had their defense impaired—as a result of the post-indictment delay in this case. Defendants' argument to the contrary rehashes the same generalized concerns the Court has now twice rejected in its *pre*-indictment analysis. (*See* Dkt. 233 at 44–46.) This is not a good

start for Defendants because whether a delay has impaired their defense is the "most important" consideration in the prejudice analysis. *United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009); *see Dunn*, 345 F.3d at 1297.

As for "oppressive pretrial incarceration" and "anxiety and concern," Defendants generally complain about the COVID-19 pandemic, family difficulties, their pending charges, and their pretrial detention in a foreign country.  (*See* Dkts. 215 at 16; 216 at 18–19; 217 at 20–21; 230 at 12–14.)  The Court does not minimize these challenges, which are real and profound.   But they are "the inevitable result of criminal prosecution";[4] "ordinarily attend imprisonment";[5] are not sufficiently "extreme," "extraordinary," or "especial" to implicate constitutional concerns;[6] or are not "the result of the *delay* in [Defendants'] trial rather than simply the result of the charges against [them]."[7]  So they cannot establish the prejudice required for a speedy trial violation.  *See, e.g.,*

---

[4] *United States v. Scott*, 850 F.2d 316, 321 (7th Cir. 1988).

[5] *Beard v. Sec'y for Dep't of Corr.*, 161 F. App'x 824, 828 (11th Cir. 2005).

[6] *Beard*, 161 F. App'x at 828; *Goodrum v. Quarterman*, 547 F.3d 249, 263 (5th Cir. 2008); *United States v. Harris*, 376 F.3d 1282, 1291 (11th Cir. 2004).

[7] *Benton*, 315 F. App'x at 793.

*Beard*, 161 F. App'x at 828 ("crowded conditions and low air temperatures" insufficient); *United States v. Kaetz*, 2021 WL 1251711, at *7 (D.N.J. Apr. 5, 2021) (noting that "general COVID-19 concerns[,] . . . anxiety, financial difficulties, and hindered relationships . . . are also obstacles that every incarcerated individual experiences"); *United States v. Norris*, 2007 WL 9655844, at *16 (N.D. Ga. June 27, 2007) ("[S]evere family problems are complaints of the sort present to some degree in virtually every case."); *Ward v. Snyder*, 838 F. Supp. 874, 879–80 (D. Del. 1993) ("[V]ague claims of anxiety, weight loss, and depression do not constitute prejudice to the extent necessary to prevail on a Sixth Amendment claim.").

Defendants did face truly abominable conditions during their confinement in a Colombian facility for about a year while they awaited extradition to the United States. (*See* Dkts. 236 at 5; 237 at 6; 239 at 7–8.)  But, as the Magistrate Judge noted, these conditions "cannot be attributed to the United States government" and thus "are insufficient to show actual prejudice warranting dismissal." (Dkt. 233 at 41); *see United States v. Mitchell*, 957 F.2d 465, 469 (7th Cir. 1992) ("While we might agree that the conditions under which Mitchell was confined in Colombia

27

were inferior, we have already noted that Mitchell's presence in Colombia was attributable to no one but himself.  Thus, we are unpersuaded by Mitchell's arguments that he was prejudiced by this incarceration."); *United States v. Hatum*, 2017 WL 3172824, at *7 (S.D. Fla. July 25, 2017) ("[T]he Government did not force or encourage Waked to travel to Colombia. Waked made that choice himself, and any difficulties encountered in his incarceration in a deficient Colombian jail do not give rise to actual prejudice.").[8]

### 4.   Conclusion

Because factors 2–3 weigh only moderately again the government, and because Defendants have not established actual prejudice under factor 4, the Court agrees with the Magistrate Judge that the post-indictment delay here does not violate the Sixth Amendment. Defendants' motion is thus denied.

---

[8] In their objections, Defendants argue the conditions of their Colombian jail should be attributed to the government.  But they do not specifically object to the Magistrate Judge's conclusion that, assuming those conditions are *not* attributable to the government, they are insufficient to constitute prejudice.  (*See* Dkts. 236 at 5; 237 at 6; 239 at 7–8.)

## IV.   Conclusion

The Court **OVERRULES** Defendants' Objections (Dkts. 236; 237; 238; 239), **ADOPTS** the Magistrate Judge's Final Report and Recommendation (Dkt. 233), **DENIES** Defendants' Joint Motion to Dismiss Indictment for Pre-Indictment and Post-Indictment Delay (Dkt. 101), and **DENIES** Defendants' renewed requests to dismiss for pre-indictment delay (Dkts. 213; 214; 215; 216; 217).

**SO ORDERED** this 23rd day of December, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE